CABASSA, DEMANDANTE Y APELANTE, *v.* BRAVO, DEMANDADO Y
APELADO.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en pleito sobre privación de patria potestad.

No. 1997.—Resuelto en diciembre 16, 1919.

PATRIA POTESTAD—EJEMPLOS CORRUPTORES—CUSTODIA DE LOS HIJOS.—El hecho de
que después de divorciada la esposa bajo cuya patria potestad fueron confia-
dos los hijos contrajera segundo matrimonio antes de los 301 días después
del divorcio con un primo hermano, así como el hecho de que poco tiempo
después de anulado este segundo matrimonio contrajera terceras nupcias con
un hombre de color y de condición social inferior a ella, no pueden estimarse
causas legales bastantes, de acuerdo con el artículo 236 del Código Civil, para
privarla o suspenderla en el ejercicio de la patria potestad.

ID.—Los ejemplos corruptores a que alude el artículo 236 del Código Civil revi-
sado son los que los padres puedan dar a sus hijos por su actual vida licen-
ciosa o por actuales actos de reconocida inmoralidad.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. A. F. Castro.*

Abogado del apelado: *Sr. A. Nazario Lugo.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del
tribunal.

En pleito de divorcio seguido por Rosaura Cabassa y
Hernández contra su esposo Alfredo Bravo y González, la
Corte de Distrito de Mayagüez pronunció sentencia en 27 de
marzo de 1914 que quedó firme en julio 18 del mismo año,
por la que declaró con lugar la demanda de la demandante
y sin lugar la contra-demanda establecida por el demandado,
disponiendo además, de acuerdo con el artículo 175 del Có-
digo Civil Revisado, que los hijos de ambos cónyuges me-
nores de edad quedaran bajo el cuidado y patria potestad
de la madre.

Esos hijos eran seis, nombrados Santos Josefina, Carlos
Alfredo, Santos, Leopoldo Guillermo, Elva y Rosaura, los
cuales todos con excepción de la llamada Elva que está con
la madre, permanecieron en la compañía de su padre.

En el pleito de divorcio indicado, el demandado Alfredo Bravo presentó moción a la corte en el año de 1918, con sú plica de que se dictara una orden privando a la demandante Rosaura Cabassa de la patria potestad sobre sus menores hijos ya relacionados, y concediendo ésta a su padre. A los fines pretendidos alegó el demandado Bravo que Rosaura Cabassa después de decretado el divorcio, lejos de cumplir con los deberes que le imponía la patria potestad sobre sus menores hijos, contrajo casi a raíz de disuelto el matrimonio. relaciones amorosas con Ricardo Nadal y Cabassa, primo carnal suyo, con el que celebró matrimonio en la colonia holandesa de Curacao, declarado nulo por sentencia firme de 29 de octubre, 1918, tanto por no haber precedido la correspondiente dispensa de parentesco cuanto por haberse verificado antes de los 301 días que marca el Código Civil para que una divorciada pueda contraer nuevas nupcias; que la demandante después de anulado el segundo matrimonio tampoco cumplió con los deberes que la ley le impone sobre sus menores hijos, y contrajo nuevo matrimonio con persona de la clase de color y, por tanto, de distinta categoría social a la de ella y sus menores hijos; que durante todo el tiempo transcurrido desde que fué decretado el divorcio la demandante no se ocupó de sus menores hijos quienes permanecieron y permanecen bajo la única atención de su padre, quien los ha sostenido siempre en todas sus necesidades, atendiendo a su educación, manutención y vestuario, sin que la madre tratara de cultivar y sostener el cariño y relaciones con sus hijos, a quienes no ha escrito una sola vez desde la fecha de su separación; que en el testamento otorgado por Leopoldo Cabassa, abuelo materno de los menores, éstos fueron instituídos legatarios en la suma de $2,000 a cada uno para los gastos de educación y manutención, habiendo sido nombrado tutor para la administración de dichos legados el hijo del testador Jacobo Cabassa y Hernández; y que la demandante no ha hecho gestión alguna para conseguir del tutor la entrega del usufructo de los legados que bien administrados

han debido producir una renta mensual de $100, que hubieran servido a los menores para los gastos necesarios de la vida.

A la anterior moción se opuso la demandante Rosaura Cabassa alegando que el procedimiento seguido por el demandado no era el adecuado para privar a la demandante de la patria potestad sobre sus menores hijos, sino que el demandado debió entablar la acción ordinaria correspondiente, y que tampoco las causas alegadas en la moción eran de las que el código reconoce como suficientes para la privación de la patria potestad.

La demandada además presentó otra moción a la corte para que en cumplimiento y ejecución de la sentencia de divorcio que disponía que los hijos del matrimonio quedaran bajo su cuidado y patria potestad se requiriera al demandado para que le hiciera entrega de los mismos.

Ambas mociones fueron señaladas y vistas en un solo acto, en que se practicaron pruebas por ambas partes, habiendo sido resueltas por orden de 9 de enero, 1919, que en lo sustancial dice así:

"La corte luego de oir la evidencia introducida y los argumentos orales de los letrados concurrentes, reservó su decisión hasta hoy 9 de enero de 1919 y en este día resuelve:

"De la prueba practicada se desprende que desde que el divorcio se decretó, en 27 de marzo de 1914 y con anterioridad a esa fecha, los expresados niños nombrados Santos Josefina, Carlos Alfredo, Santos, Leopoldo Guillermo y Rosaura viven en compañía de su padre el demandado, quien los ha venido sosteniendo en las condiciones de posición social que ocupa la familia, que es de la primera sociedad, proveyéndolos de lo necesario para su manutención, vestuario, asistencia médica e instrucción; que durante todo ese tiempo la madre de dichos menores, la demandante, no se ha ocupado de los mismos, ni siquiera que hubiera intentado en una sola ocasión ver a dichos menores, y ahora cuando el abuelo de estos menores, don Leopoldo Cabassa, falleció, hace poco tiempo, dejando en su testamento un legado para ser empleado en la educación de aquéllos, es cuando la madre se presenta por primera vez demostrando interés en tener a sus citados hijos a su lado.

"La demandante ha contraído dos matrimonios con posterioridad a la sentencia de divorcio, uno en Curacao, con un primo hermano suyo, el cual matrimonio fué anulado, y el otro en la ciudad de New York, con un hombre, que la hija mayor de dicha demandante, nombrada Josefina, declara que es de raza inferior, sin que esa afirmación fuera refutada en manera alguna.

"Los hijos Josefina, Alfredo y Santos, declararon en la vista de esas mociones y expresaron que preferían continuar viviendo con su padre; que la madre los tenía abandonados en absoluto y que ésta no les podía tener ningún cariño, y que ellos se encontraban felices en la forma que vivían en la actualidad.

"De estos hechos, la corte llega a la conclusión, considerando como debe considerar en estos casos, nada más que el bienestar de los menores, que ellos deben permanecer bajo el cuidado de su padre, el demandado, quien debe invertir las rentas que produce el legado dejado por el abuelo a los menores en la instrucción de los mismos.

"Por tanto, la corte declara sin lugar la moción de la demandante y decreta y ordena que los menores Santos Josefina, Carlos Alfredo, Santos, Leopoldo Guillermo y Rosaura Bravo y Cabassa, continúen bajo la custodia y cuidados de su padre el demandado Alfredo Bravo y González quien deberá invertir las rentas que produzca el legado hecho a los mismos por su abuelo don Leopoldo Cabassa para los fines a que fué destinado por el testador.''

La resolución transcrita ha sido apelada por la demandante Rosaura Cabassa y su representación alega como motivo del recurso los siguientes: 1°., que la corte incurrió en error al estimar válido y eficaz el procedimiento seguido por la parte demandada para privar a la demandante de la patria potestad; 2°., que la corte incurrió en error al privar a la demandante de la patria potestad de sus menores hijos y concederla al demandado otorgando a éste la custodia de los menores y la administración de sus bienes.

Considerada aisladamente la moción del peticionario, Alfredo Bravo entendemos que la cuestión legal sobre privación de la patria potestad debe discutirse y resolverse por los trámites del juicio ordinario y no por el procedimiento de una simple moción.

Comentando Scaevola el artículo 171 del Código Civil Es-

pañol, que con alguna ligera variación es el 236 del Código
Revisado, dice así:

"Pero si, como será lo más probable, el padre o la madre se opo-
nen, como quiera que ya surge una cuestión entre partes conocidas
y determinadas, el asunto revestirá ya carácter contencioso, que ha-
brá de resolverse en un juicio ordinario de mayor cuantía, por tra-
tarse de la pérdida o extinción de derechos tan importantes como
los inherentes a la patria potestad."

3 Scaevola 367.

De la misma opinión es el ilustrado comentarista Man-
resa:

"Si es necesario emplear el procedimiento civil, deberán decidirse
estas cuestiones en juicio ordinario de mayor cuantía, por referirse
a derechos que versan sobre la condición de las personas."

2 Manresa 62.

Y esa ha sido la práctica seguida en las cortes insulares
aun después de regir el actual Código de Enjuiciamiento Ci-
vil. *LeHardy* v. *Acosta,* 18 D. P. R. 450, y *Arbona* v. *Torres,*
24 D. P. R. 450.

Pero teniendo en cuenta que por sentencia dictada en
pleito de divorcio de Rosaura Cabassa contra Alfredo Bravo
fué que se dispuso que los hijos de ambos cónyuges menores
de edad quedaran bajo el cuidado y patria potestad de la
madre, que en ese mismo pleito presentó Bravo la moción
para que se privara a Rosaura Cabassa de la patria potestad
conferídale, que en el propio pleito presentó otra moción la
Rosaura Cabassa interesando el cumplimiento de la senten-
cia de divorcio, que ambas mociones fueron acumuladas y
que se practicaron pruebas por ambas partes en apoyo de
sus respectivas alegaciones, viniendo a ser la moción de
Bravo como una oposición a la moción de Rosaura Cabassa,
pasamos a examinar el segundo motivo del recurso. Esta-
blece el artículo 175 del Código Civil que en todos los casos
de divorcio los hijos menores serán puestos bajo el cuidado
y patria potestad de la parte que lo hubiese obtenido, te-
niendo el otro cónyuge derecho a continuar las relaciones

de familia con sus hijos, y según el artículo 234 el padre o
la madre perderán la patria potestad sobre sus hijos, cuando
por sentencia firme en pleito de divorcio se concediese la
custodia de los hijos a uno de los cónyuges.

En virtud de la sentencia que pronunció la Corte de Dis-
trito de Mayagüez en el pleito de divorcio de Rosaura Ca-
bassa contra Alfredo Bravo, los hijos menores de ambos
cónyuges habían de quedar bajo el cuidado y patria potes-
tad de la madre, habiéndola perdido desde entonces el padre.

Ciertamente que el artículo 175 que dejamos citado, no
puede entenderse en el sentido de reconocer al cónyuge ino-
cente el derecho inmediato y sin condiciones ni reservas a
la custodia física de los hijos menores de edad, pero esas
condiciones y reservas no pueden ser arbitrarias sino que
deben ser las que se encuentran determinadas en el estatuto.

El artículo 236 del Código Civil expresa claramente las
condiciones y limitaciones en que pueden los padres ser pri-
vados de la patria potestad con respecto a sus hijos o en que
puede suspenderse la misma.   Ese artículo dice así:

"Art. 236.—Los tribunales pueden privar a los padres de la pa-
tria potestad o suspender el ejercicio de ésta, si trataren a sus hijos
con dureza excesiva o si les dieren órdenes, consejos o ejemplos co-
rruptores, nombrando en su lugar un tutor con arreglo a la ley para
las personas de los hijos   *   *   *."

Al anterior precepto es aplicable la doctrina contenida
en el axioma legal *expresio unius est exclusio alterius.*

No encontramos en los autos ninguna prueba referente a
dureza excesiva en el trato, órdenes, consejos o ejemplos co-
rruptores que puedan justificar la privación de la patria po-
testad con relación a la madre.   Su segundo matrimonio de-
clarado nulo y su tercer matrimonio con un hombre de color,
de condición social inferior a la suya y a la de sus hijos, no
pueden estimarse razones legales de las comprendidas en el
artículo 236 para la privación o suspensión de la patria po-
testad.

Es cierto que el bienestar de los hijos debe ser debida-

mente tomado en consideración por las cortes, pero éstas deben recordar que también la ley ha sido decretada teniendo en consideración este fin. 21 Cyc. 331, 332 y 333; In re Gates, 95 Cal. 461.

Así lo dijimos al resolver el caso de *LeHardy* v. *Acosta,* 18 D. P. R. 458, y añadimos entonces y repetimos ahora: "Y aunque las cortes tienen el deber de ejercitar el mayor cuidado en la protección de los niños en todos sus derechos e impedir que se les ocasione ningún perjuicio, sin embargo, este cuidado debe ejercitarse en el presente caso en la forma indicada por nuestro código, y es el deber de las cortes, tanto en éste como en los demás casos, observar la ley. Como la corte sentenciadora, sin duda con las mejores intenciones, no tomó en consideración los requisitos exigidos por los estatutos al dictar la sentencia apelada, no debemos permitir que subsista la sentencia así dictada. "El padre debe tener el dominio absoluto y custodia de sus menores hijos a menos que se alegue y pruebe alguna poderosa razón legal en contrario."

No importa que los hijos Josefina, Alfredo y Santos declararan en la vista de las mociones que preferían continuar viviendo con su padre, que la madre los tenía abandonados en absoluto, que ésta no les podía tener ningún cariño y que ellos se encontraban felices en la forma en que vivían.

Alfredo Bravo, aunque divorciado de Rosaura Cabassa con pérdida de la patria potestad sobre sus hijos menores, no dejó de ser padre legítimo de los mismos y al atenderlos como los atendía, cumplió los deberes de padre, ya que la madre no se cuidaba de aquéllos, pero nunca esa falta de cuidado sería razón bastante para la pérdida o suspensión de la patria potestad confiriéndola a Bravo. Rosaura Cabassa tiene derecho reconocido por la ley y por sentencia judicial a la custodia de sus hijos; Bravo ha perdido ese derecho, y la mera preferencia de los hijos por regla general no puede prevalecer sobre semejante derecho. 29 Cyc. 1596.

No hay la más ligera indicación de que Rosaura Cabassa

en el hogar actualmente constituído por ella y su actual esposo pueda dar ejemplos corruptores a sus hijos, sea cual haya sido su anterior conducta, y por tanto falta una causa actual bastante para privarla de la patria potestad que la ley le reconoce, pues según sentencia del Tribunal Supremo de España de 9 de noviembre de 1898, los ejemplos corruptores a que alude el artículo 171 del Código Civil Español, equivalente al 236 del reformado, son los que los padres pueden dar a sus hijos por su actual vida licenciosa o por actos de presente de reconocida inmoralidad.

Si Rosaura Cabassa dejó de cumplir los deberes de una madre solícita por el bienestar de sus hijos, hoy se manifiesta dispuesta a cumplir esos deberes, y las cortes están en el deber de colocarla en condiciones de que así lo haga, poniendo a sus menores hijos bajo su custodia, sin interrumpirse las relaciones de familia entre el padre y los hijos.

Es de revocarse la resolución apelada.

*Revocada la resolución apelada y ordenada la entrega de los hijos a la madre apelante.*

Jueces concurrentes: Sres. Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf firmó "conforme con la sentencia."

El Juez Asociado Sr. Hutchison no tomó parte en la resolución de este caso.